UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-605-H


JERRY LINTON                                                                              PLAINTIFF

V.

JOEY RIDDLE
DONNIE HUDSON                                                                          DEFENDANTS


**MEMORANDUM OPINION**

Plaintiff, Jerry Linton ("Linton"), a former contract employee of the Jefferson County

Public School System, brings this lawsuit alleging assault, libel and violation of her First and

Fourteenth Amendment rights. Plaintiff's claims arise out of a dispute she had with Defendants

Joey Riddle ("Riddle") and Donnie Hudson ("Hudson"), the Principal and Assistant Principal,

respectively, of Iroquois High School. This matter is before the Court on Defendants' motion for

summary judgment. For the reasons that follow, the Court will sustain the motion and dismiss

the case.

I.

In May 2008, Jerry Linton, a retired teacher, was working at Iroquois High School as part

of a pilot program based at Jefferson County High School.[1] Linton had been employed through

the pilot program, pursuant to a series of one-year contracts, since 2003. At Iroquois, Linton

worked with non-traditional students and students at risk of dropping out of school. During the

---

[1] Because this is a summary judgment motion, the Court views the facts in light most favorable to Plaintiff.
*See Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

time period at issue in this lawsuit, Linton's son, David Keith Linton ("Keith Linton")[2] also

worked at Iroquois, though not in the pilot program. Defendant Riddle was the Principal at

Iroquois High School and Defendant Hudson was the Assistant Principal. In her deposition,

Linton described a series of negative encounters between herself and Riddle that led to a poor

working relationship. The last of those involved her son. Specifically, in the days leading up to

the dispute at issue in Linton's claim, Riddle and Keith Linton argued over Keith's failure to

provide a doctor's note after missing a day of work. Riddle ultimately instructed Keith Linton to

leave the school building and return the next day for a meeting to discuss a written reprimand. It

was upon Jerry Linton and Keith Linton's arrival at school the next morning, that the facts

giving rise to Jerry Linton's claim occurred.

On May 21, 2008, as Linton was signing in at the office, Riddle yelled to her that he

needed to see her. Linton, who assumed (correctly) the meeting related to the write-up of her

son, requested a "representative," because she did not want to meet with Riddle alone.[3]

According to Linton, Riddle ignored the request and repeated that he wanted a meeting in his

office. It is not clear whether Linton again asked for a representative, but, according to Linton,

Riddle then "screamed" at her to get out of the building. Linton responded by leaving the office

and walking towards the front door of the building and then stopping to call her pilot program

supervisor. Then, according Linton's deposition:

> The minute I got someone on the phone, Joey Riddle turned around kicked heels and
> went back into the office. The next thing I know, I'm being followed by Donnie

---

[2] Keith Linton is the plaintiff in another lawsuit before this Court. *See* Case No. 3:09-CV-24.

[3] Linton said in her deposition that the representative "could have been any teacher in the building." She did not specifically indicate, then or later, that she wanted a union representative at her meeting. The record does not definitively answer whether Linton was a union member at the time of the dispute with Riddle.

Hudson on my heels. If I had stopped with either one of them, they would have run over the top of me. ... I walked out of the building, stopped, asked Donnie Hudson if he would please step back because it was very embarrassing. I was already embarrassed enough. He said no, he was following his instructions. He followed us all the way to the doors before you go through the final doors to get out of the back door of Iroquois ... .

(Pl.'s Dep. [Dkt. No. 25-3], 20:19-25, March 15, 2010.)

Linton indicated that everyone in the Iroquois office, including students, counselors and secretaries, witnessed the event. After it was over, Linton went to her car, moved it to an adjacent lot and called her pilot program supervisor, Tom Carter, to request that she not have to return to Iroquois. Apparently, Riddle also requested that Linton be reassigned. Linton finished her one-year contract at Dawson Orman Education Center and was not re-hired for the following year.

In November 2008, Linton filed her lawsuit in Jefferson Circuit Court; Defendants removed the case to this Court. After taking discovery, Defendants filed the present motion.

II.

Summary judgment is appropriate where no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party initially bears the burden of demonstrating that an essential element of the non-moving party's case is lacking. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999). The non-moving party may respond by showing that a genuine issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute exists where, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. The Sixth Circuit has stated the standard for summary judgment as follows: "Whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citation omitted).

In determining whether summary judgment is appropriate, the Court must resolve all

ambiguities, and draw all reasonable inferences, against the moving party. *Matsushita Electrical*

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

III.

Plaintiff's first claim is that Defendants' actions constitute the intentional tort of assault

under Kentucky law. "Assault is a tort which merely requires the threat of unwanted touching of

the victim, while battery requires an actual unwanted touching." *Andrew v. Begley*, 203 S.W.3d

165, 171 (Ky. App. 2006). Intent is an essential element of assault. *Banks v. Fritsch*, 39 S.W.3d

474, 480 (Ky. App. 2001). Words alone cannot constitute assault. *Stump v. Wal-Mart Stores,*

*Inc.*, 942 F.Supp. 347, 350 (E.D.Ky. 1996). Here, Defendants argue that the record is devoid of

evidence that there was a threat of unwanted touching. Specifically, they point to Linton's

testimony that she never feared for her physical safety, referencing the following excerpt from

her deposition:

> Q: Did Mr. Riddle ever threaten to harm you physically?
> A: If he had, we wouldn't be here right now, because I would have reported it, and I would have gotten the police involved – not the resource officer, the police.
> Q: So that was a no?
> A: No.
> Q: Has anyone at – anyone other than Mr. Riddle ever threatened to harm you physically while you were at Iroquois High School?
> A: I've stated that I was verbally, not physically.
> Q: Verbally not physically, what?
> A: Threatened. ...
> Q: So at no point while you were at Iroquois High School did you feel physically threatened?
> A: I'm a woman. I hope I'm not physically threatened. I repeat. As Mr. Kimball and I have discussed, if I had stopped very quickly with either Mr. Ridde or Mr.

4

Hudson behind me, not intentionally, but they would have run over the top of me.
...

A:    That's not why we're here anyway, I have never said that I was physically threatened.

(Pl.'s Dep., 54:7-55:13.) In response, Plaintiff's counsel points to the following language from Linton's deposition to support her claim of assault: "If I had stopped with either one of them, they would have run over the top of me." (Pl.'s Dep., 20:24-25.) This language, on its own, does not provide the factual basis for an assault claim. Moreover, Linton specifically clarified, later in her deposition, that if she had stopped immediately, Riddle or Hudson would have run over her, but "not intentionally." (Pl.'s Dep., 55:7.) Linton's testimony makes clear that there was neither a threat of unwanted touching nor an intent to touch. Because both of these elements are required to state a claim for assault, Linton's assault fails as a matter of law.

IV.

Linton next argues that Riddle's order to leave the building and Hudson and Riddle's physical actions in escorting her out of the building constitute "libel by pantomime." Only a few jurisdictions have recognized this cause of action. In those jurisdictions, the plaintiff was handcuffed or physically removed from a building after being falsely accused of committing a crime, such as shoplifting. *See Bolton v. Department of Human Services*, 540 N.W.2d 523(Minn. 1995); *K-Mart Corporation v. Washington*, 866 P.2d 274 (Nev. 1993).[4] Kentucky has never addressed this unusual form of libel. Because the Court has no reason to believe Kentucky would recognize libel by pantomime, much less do so under these circumstances, the Court declines adopt the new cause of action.

---

[4] In fact, a Maryland Court found that an employer's act of escorting an employee out of a building after termination was not enough to constitute a defamatory publication. *See Gay v. William Hill Manor, Inc.*, 536 A.2d 690 (Md. App. 1988).

V.

Plaintiff also argues that Riddle has defamed her.[5] Defamation has four elements: 1)

defamatory language, 2) about the plaintiff, 3) which is published and 4) which causes injury to

reputation. *Columbia Sussex Corp. Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981); *Stringer*

*v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781 (Ky. 2004). Linton's defamation claim suffers from

numerous flaws. First, she alleges no specific defamatory language. She only claims that Riddle

yelled "I need to see you," and that he "screamed for me to get out of the building." (Pl.'s Dep.,

19:17, 20:11.) Linton argues that these words have a defamatory meaning in that they led others

to believe Linton had been insubordinate to Riddle.  However, *even assuming* such general

directives could be construed as defamatory statements,  Riddle and Hudson, as Linton's

supervisors, enjoyed a qualified privilege against defamation claims. *Stringer*, 151 S.W.3d at

796. "When a qualified privilege is established, the presumption of malice disappears, and thus

'false and defamatory statements will not give rise to a cause of action unless maliciously

uttered."[6] *Id.* at 797. Here, Plaintiff does not contest that Defendants enjoy a qualified privilege,

but instead argues that the privilege was abused.  *Id.*  In *Stringer*, the Kentucky Supreme Court

said:

> The condition attached to all such qualified privileges *is that they must be exercised
> in a reasonable manner and for a proper purpose*. The immunity is forfeited if the
> defendant steps outside the scope of the privilege, or abuses the occasion. The
> qualified privilege does not extend . . . to the publication of irrelevant defamatory

---

[5] Plaintiff's Complaint never mentions defamation, but the Court will address the issue here because the
parties include some discussion of the claim in their briefs.

[6] Linton argues that under Kentucky law, a court can presume malice from falsity. The Court does not
address this legal assertion, because the facts show that Linton *was* being insubordinate by denying a lawful request
from her supervisor to have a meeting with him. Thus, the statements Defendants allegedly made asserting that
Plaintiff was insubordinate were true. Truth is a complete defense to a claim of libel. *Bell v. Courier-Journal &
Louisville Times Co.*, 402 S.W.2d 84, 87 (Ky. 1966).

> matter with no bearing upon the public or private interest which is entitled to protection.

*Id.* (emphasis in original)(*citing Tucker v. Kilgore, Ky.*, 388 S.W.2d 112, 115 (1964)(citation omitted)). Here, the Defendants were acting within the scope of the privilege because they were Linton's functional supervisors; their job was to keep order at Iroquois High School, and disciplining an employee who disobeyed an order was within that job. Because their actions were not unreasonable and their directives did not include "irrelevant defamatory matter," they did not abuse their privilege. As such, Defendants enjoyed a privilege in making the statements they made and Linton's defamation claim fails as a matter of law.

## VI.

Last, Linton argues that her First Amendment right to freedom of association[7] was violated when Defendants disciplined her for requesting the presence of a "representative" at her meeting. Two United States Supreme Court opinions, *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983) set forth the test for restraints on government employee speech or association. *Pickering* created a balancing test for government employee speech that touched on a matter of public concern, saying that courts should "arrive at a balance between the interest of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. The Sixth Circuit has characterized the balancing test as a form of "intermediate scrutiny." *Akers v. McGinnis*, 352 F.3d 1030, 1037 (6th Cir. 2003). *Connick*, on the other hand, addressed the rights of government

---

[7] Linton's Complaint also alleged that Defendants violated her freedom of speech. She has since waived that claim.

employees who were speaking about matter *not* of public concern:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147 (internal citations omitted). Thus, the test applicable to speech about non-public concerns is rational basis review. *Akers*, 352 F.3d at 1037. The Sixth Circuit has also applied the *Connick* language to First Amendment association claims. *See Boals v. Gray*, 775 F.2d 686, 692 (6th Cir. 1985).

Therefore, the Court must first determine whether Linton's request for a representative involved a matter of public concern. According to *Connick,* "[W]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. at 147. Here, it is clear that Linton's request for a representative did not touch on a matter of public concern. Her interest in having a representative was entirely personal – she did not want to meet with Riddle alone because they had a poor working relationship. Thus, Linton's claim is not analyzed under the *Pickering* test, but rather is subject to rational basis review.[8]

Linton argues, without much support from the record, that her request was for a union representative, and as such it related to a matter of public concern. *See Boals*, 775 U.S. at 693 ("an employee who is disciplined solely in retaliation for his membership in and support of a union states a valid first amendment claim under *Connick* and *Pickering*") However, the facts of

---

[8] Riddle's actions here pass rational basis review, because, as stated above, he was the Principal of the school, and thus had the authority to discipline or expel teachers who did not follow his orders. To hold otherwise would be to cripple school administrators by removing from their dominion, control over the employees they are there to direct.

this case show that Linton was disciplined *not* for her request to have a representative (union or any other sort) but rather for her refusal to meet with Riddle. Moreover, Linton said in her deposition that she did not even know, at the time of the incident, whether she was a member of the union. Therefore, it would have been impossible for Defendants to punish her for association with a group she did not know she was a member of. Clearly, the only reasonable interpretation of the facts presented is that Riddle's punishment was related to Linton's insubordination, rather than caused by her request for a representative. *See Boals*, 775 U.S. at 689-94 (dismissing case where evidence did not show that defendant employer's discipline had anything to do with plaintiff employee's union membership, even after plaintiff asked for a union representative or lawyer). Thus, Linton's claim that the Defendants' behavior violated her First Amendment right to freedom of association fails.

The Court will issue an order consistent with this Memorandum Opinion.

cc:     Counsel of Record